# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: ABILIFY (ARIPIPRAZOLE) PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2734 |
| This Document Relates to the following case: | |
| *Findeisen v. Bristol-Myers Squibb Co., et al.*, Case No. 3:19-cv-00022 | Judge M. Casey Rodgers<br>Magistrate Judge Gary Jones |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Bristol-Myers Squibb Company ("BMS"), Otsuka America Pharmaceutical, Inc. ("OAPI"), and Otsuka Pharmaceutical Co., Ltd. ("OPC") hereby move under Federal Rule of Civil Procedure 56 for summary judgment on all counts alleged in the Complaint. Defendants' motion is supported by the accompanying memorandum of law and exhibits.

Dated: August 31, 2020

Respectfully submitted,

/s/ Larry Hill
Larry Hill (Florida Bar No. 173908)
Charles F. Beall, Jr. (Florida Bar No. 66494)
MOORE, HILL & WESTMORELAND, P.A.
350 West Cedar Street
Maritime Place, Suite 100
Pensacola, FL 32502
850-434-3541
lhill@mhw-law.com
ljohnson@mhw-law.com
cbeall@mhw-law.com

Anand Agneshwar (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
212-836-8000
anand.agneshwar@arnoldporter.com

Matthew A. Eisenstein (*pro hac vice*)
Paige H. Sharpe (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
202-942-6606
matthew.eisenstein@arnoldporter.com
paige.sharpe@arnoldporter.com

Lauren Colton (*pro hac vice*)
HOGAN LOVELLS US LLP
100 International Drive, Suite 200
Baltimore, Maryland 21202
410-659-2700
lauren.colton@hoganlovells.com

*Attorneys for Defendant Bristol-Myers Squibb Company*

*/s/  Matthew Campbell*
Matthew A. Campbell (*pro hac vice*)
Matthew M. Saxon (*pro hac vice*)
Rand K. Brothers *(pro hac vice)*
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
202-282-5848
macampbe@winston.com
msaxon@winston.com
rbrothers@winston.com

Luke A. Connelly (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
212-294-6882
lconnell@winston.com

Hal K. Litchford (Florida Bar No. 272485)
Kyle A. Diamantas (Florida Bar No. 106916)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
200 South Orange Avenue, Suite 2900
Orlando, FL 32801
407-422-6600
hlitchford@bakerdonelson.com
kdiamatas@bakerdonelson.com

Kelly Overstreet Johnson (Florida Bar No.
0354163)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
101 N Monroe Street, Suite 925
Tallahassee, FL 32301
850-425-7500
kjohnson@bakerdonelson.com

*Attorneys for Defendants Otsuka Pharmaceutical Co., Ltd.*
*and Otsuka America Pharmaceutical, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY this 31st day of August, 2020, that a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via email to all registered counsel of record.

*/s/ Matthew Campbell*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: ABILIFY (ARIPIPRAZOLE) PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2734 |
| This Document Relates to the Following Case: | |
| *Findeisen v. Bristol-Myers Squibb Co., et al.*, 3:19-cv-00022-MCR-GRJ | Judge M. Casey Rodgers<br>Magistrate Judge Gary Jones |

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

STATEMENT OF UNDISPUTED FACTS ............................................3

ARGUMENT ..........................................................................................9

I.     The Claims Based on an Alleged Failure to Warn Are Not Supported by Evidence That a Warning Would Have Prevented His Injuries....................11

II.    Mr. Findeisen Has Failed to Adduce Any Evidence Supporting His Design and Manufacturing Defect Claims. ...................................................16

III.   Mr. Findeisen Has Not Adduced Any Evidence to Support His Negligent Misrepresentation and Fraudulent Concealment Claims..............................18

IV.    Mr. Findeisen's Rhode Island DTPA Claims Are Barred Because the Abilify Label Was Subject to Federal Regulation........................................20

V.     Mr. Findeisen Failed to Provide the Required Notice for His Breach of Warranty Claims...........................................................................................24

VI.    Under Rhode Island Law, Mr. Findeisen Cannot Bring a Separate Claim for Negligence Per Se. ....................................................................................26

CONCLUSION......................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allgood v. GlaxoSmithKline PLC*,
    2008 WL 483574 (E.D. La. Feb. 20, 2008)........................................................15

*Almonte v. Kurl*,
    46 A.3d 1 (R.I. 2012) ...........................................................................................11

*Audette v. New England Transp. Co.*,
    46 A.2d 570 (1946) ..............................................................................................26

*Boudreau v. Automatic Temperature Controls, Inc.*,
    212 A.3d 594 (R.I. 2019) .....................................................................................19

*Castrignano v. E.R. Squibb & Sons, Inc.*,
    546 A.2d 775 (R.I. 1988) .....................................................................................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................9

*Chavers v. Fleet Bank (RI), N.A.*,
    844 A.2d 666 (R.I. 2004)...........................................................................21, 22, 23

*Costantino v. Ford Motor Co.*,
    178 A.3d 310 (R.I. 2018)......................................................................................17

*Costco Wholesale Corp. v. Johnson & Johnson Vision Care, Inc.*,
    2015 WL 9987969 (M.D. Fla. Nov. 4, 2015).......................................................10

*Crawford v. Cooper/T. Smith Stevedoring Co., Inc.*,
    14 F. Supp. 2d 202 (D.R.I. 1998) ........................................................................11

*Cruz v. DaimlerChrysler Motors Corp.*,
    66 A.3d 446 (R.I. 2013)........................................................................................18

*Dent v. PRRC, Inc.*,
    184 A.3d 649 (R.I. 2018)......................................................................................25

*Dietz v. Smithkline Beecham Corp.*,
   598 F.3d 812, 816 (11th Cir. 2010) ....................................................................14

*DiPalma v. Westinghouse Elec. Corp.*,
   938 F.2d 1463 (1st Cir. 1991)............................................................................17

*Eghnayem v. Bos. Sci. Corp.*,
   873 F.3d 1304 (11th Cir. 2017) .........................................................................12

*Garside v. Osco Drug, Inc.*,
   976 F.2d 77 (1st Cir. 1992)................................................................................12

*Gray v. Derderian*,
   472 F. Supp. 2d 172 (D.R.I. 2007) ...................................................................11

*Greaves v. Eli Lilly & Co.*,
   503 F. App'x 70 (2d Cir. 2012) .........................................................................12

*Gronniger v. Am. Home Prod. Corp.*,
   2005 WL 3766685 (Pa. Com. Pl. Oct. 21, 2005) .............................................15

*Guilbeault v. R.J. Reynolds Tobacco Co.*,
   84 F. Supp. 2d 263 (D.R.I. 2000) .....................................................................17

*Harodite Indus., Inc. v. Warren Elec. Corp.*,
   24 A.3d 514 (R.I. 2011) ....................................................................................10

*Hodges v. Brannon*,
   707 A.2d 1225 (R.I. 1998)................................................................................12

*Hogan v. Novartis Pharm. Corp.*,
   2011 WL 1533467 (E.D.N.Y. Apr. 24, 2011) ..................................................12

*Hyde v. Philip Morris, Inc.*,
   1998 WL 656074 (D.R.I. May 1, 1998) .......................................................24, 25

*Ironworkers Local Union 68 v. AstraZenica Pharms., LP*,
   634 F.3d 1352 (11th Cir. 2011) .....................................................................21, 22

*Jodoin v. Toyota Motor Corp.*,
   284 F.3d 272 (1st Cir. 2002)..............................................................................16

*Lariviere v. Dayton Safety Ladder Co.*,
   525 A.2d 892 (R.I. 1987) ......................................................................26

*Larsen v. Citibank FSB*,
   871 F.3d 1295 (11th Cir. 2017) ...........................................................10

*Lynch v. Conley*,
   853 A.2d 1212 (R.I. 2004) .......................................................20, 21, 23

*Manchester v. Pereira*,
   926 A.2d 1005 (R.I. 2007) ....................................................................18

*McGriff v. Minnesota Mut. Life Ins. Co.*,
   127 F.3d 1410 (11th Cir. 1997) .............................................................9

*In re Mentor Corp.*,
   2016 WL 4611572 (M.D. Ga. Sept. 2, 2016) .......................................14

*Miller v. Wells Fargo Bank, N.A.*,
   160 A.3d 975 (R.I. 2017)......................................................................22

*Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*,
   496 F.3d 1231 (11th Cir. 2007) .............................................................9

*Parrillo v. Giroux Co.*,
   426 A.2d 1313 (R.I. 1981)....................................................................24

*Ralston Dry-Wall Co. v. U.S. Gypsum Co.*,
   740 F. Supp. 926 (D.R.I. 1990), *aff'd*, 926 F.2d 99 (1st Cir. 1991)..................25

*Rimbert v. Eli Lilly & Co.*,
   577 F. Supp. 2d 1174 (D.N.M. 2008)..................................................12

*Rodman v. Otsuka Am. Pharm., Inc.*,
   2020 WL 2525032 (N.D. Cal. May 18, 2020), *reconsideration
   denied*, 2020 WL 4207441 (N.D. Cal. July 22, 2020).........................14

*Ryan v. Roman Catholic Bishop of Providence*,
   941 A.2d 174 (R.I. 2008) ......................................................................20

*Salcone v. Bottomley*,
   129 A.2d 635 (1957).............................................................................26

*Smith v. Davol Inc.*,
2016 WL 7041131 (R.I. Super. Ct. Nov. 28, 2016) ..........................................11

*State v. Piedmont Funding Corp.*,
382 A.2d 819 (R.I. 1978)..............................................................................20, 22

*Swajian v. Gen. Motors Corp.*,
916 F.2d 31 (1st Cir. 1990)..................................................................................17

*Valvo v. Trans Union LLC*,
2005 WL 3618272 (D.R.I. Oct. 27, 2005).........................................................22

*Wilson Auto Enters., Inc. v. Mobil Oil Corp.*,
778 F. Supp. 101 (D.R.I. 1991) ..........................................................................26

*In re Zyprexa Prod. Liab. Litig.*,
2009 WL 3596982 (E.D.N.Y. Oct. 20, 2009) ....................................................14

## Statutes

28 U.S.C. § 1407 .....................................................................................................10

R.I. Gen. Laws § 6-13.1-4........................................................................................20

R.I. Gen. Laws § 6-13.1 *et seq.*......................................................................*passim*

R.I. Gen. Laws § 6A-2-607(3)(a)..............................................................................24

## Other Authorities

21 C.F.R. § 202.1(j)(1)..............................................................................................21

Fed. R. Civ. P. 56 ......................................................................................................9

Restatement (Second) of Torts § 402A cmt. k..........................................................16

## **INTRODUCTION**

Defendants Bristol-Myers Squibb Company, Otsuka Pharmaceutical Co. Ltd., and Otsuka America Pharmaceutical, Inc. (collectively, "Defendants") respectfully request that this Court grant summary judgment on all counts of the complaint filed by Plaintiff Scott Findeisen.[1]  Mr. Findeisen, a resident of Rhode Island, who admitted to providing perjured testimony during his recent deposition, alleges that the prescription medication, Abilify®, caused him to compulsively gamble, ███████████████████████████████.  He asserts ten causes of action—none of which survive scrutiny.

**Failure to Warn.**  Mr. Findeisen's central allegation is that he suffered injuries because Defendants failed to warn him adequately that Abilify can cause compulsive behaviors, including compulsive gambling and hypersexuality.  To prevail on his failure-to-warn claims under Rhode Island law, Mr. Findeisen must prove that the alleged failure to warn proximately caused his injuries.  But his own doctor testified that: (1) he made no changes to his prescribing practices when a warning concerning impulsive behaviors was added to the Abilify label in 2016; (2) to this day, he does not inform patients of the risk of compulsive behaviors

---

[1] Defendants are filing this motion now in accordance with the Court's direction at the August 7, 2020 conference, even though discovery is not yet complete.  Defendants reserve their right to renew or refile this motion after the completion of fact and expert discovery, and to include other grounds for summary judgment at that time.

when prescribing Abilify; and (3) that he stands by his treatment of Mr. Findeisen. The undisputed evidence thus confirms that a warning would not have prevented any of Mr. Findeisen's alleged injuries.

**Design and Manufacturing Defect.**   Mr. Findeisen's design and manufacturing defect claims also fail because he has not adduced any evidence— expert or otherwise—showing that Abilify was defective in design or manufacture. Not one of his experts offered any opinions on the design or manufacture of Abilify.  Indeed, after years of litigation, there is simply no evidence in the record to meet many, if not all, of the elements of a design or manufacturing defect claim under Rhode Island law.

**Negligent Misrepresentation and Fraudulent Concealment.**  Mr. Findeisen's negligent misrepresentation and fraudulent concealment claims also fail to provide any evidence to support his claims.  He does not point to a single affirmative misrepresentation by Defendants, let alone one he relied upon.  Indeed, Mr. Findeisen admitted that he never read the Abilify label or conducted any independent research on the medication until well after he stopped taking Abilify.

**Rhode Island Deceptive Trade Practices Act ("DTPA").**  Mr. Findeisen is barred from seeking recovery under the Rhode Island DTPA because it expressly excludes actions or transactions that are subject to intense federal regulation.  It is

undisputed that the approval, labeling, and sale of prescription drugs are closely regulated by the U.S. Food and Drug Administration.

**Breach of Warranty.**  Mr. Findeisen failed to provide the required notice to the Defendants that he discovered any breach of warranty, therefore his claims fail. In addition, his breach of express warranty claim fails because he did not identify an allegedly false representation made by Defendants nor explain how he relied on that statement, and his breach of implied warranty claim fails because he cannot show that any defect proximately caused his injury.

**Negligence Per Se.**  Rhode Island does not recognize negligence per se as a separate cause of action, therefore Mr. Findeisen's final claim must also fail.

For these reasons and those discussed below, the Court should grant summary judgment in favor of Defendants.

### STATEMENT OF UNDISPUTED FACTS

Abilify (aripiprazole) is a prescription medication indicated for the treatment of certain serious mental illnesses and belongs to a class of drugs known as "atypical" or "second-generation" antipsychotics. The U.S. Food and Drug Administration ("FDA") first approved Abilify for sale in November 2002, and it remains widely prescribed for the treatment of schizophrenia, bipolar disorder,

major depressive disorder, pediatric bipolar, pediatric schizophrenia and irritability associated with autistic disorder in certain patients.[2]

Mr. Findeisen is 60 years old and lived in Rhode Island during all relevant periods. ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████. In March 2011, Dr. Thomas Scaramella, Mr. Findeisen's psychiatrist, prescribed Mr. Findeisen Abilify ███████████████████████████████. Ex. 1 (T. Scaramella Tr.) at 199:21-200:6. Mr. Findeisen took Abilify from March 2011 to June 2013, ████████████████████████████████████ ██████████ Ex. 2 (CVS Record, 18 RT 1-23) at 7; Ex. 3 (S. Findeisen Tr.) at 127:10-21. He restarted Abilify several months later in November 2013. Ex. 2 at 11; Ex. 3 at 130:18-20. In July 2015, Mr. Findeisen's doctor changed his prescription to the generic version of Abilify, aripiprazole, and he continued to take aripiprazole through August 2016. Ex. 2 at 12. ███████████████ ████████████████████████████████. Ex. 1 at 226:2-11. Mr. Findeisen claims ██████████████████████████████████ ████████████████████████. Ex. 3 at 160:24-161:2. █████████████

_____

[2] Abilify Feb. 2020 Label, at 1, *available at* https://www.accessdata.fda.gov/drugsatfda_docs/label/2020/021436s044s045,0217 13s035s036,021729s027s028,021866s029s030lbl.pdf.



█████ *Id.* at 57:20-58:8. ██████████████████████████. *Id.* at 371:3-7. ████████████████████████████

████████████████████████████

███████████. *Id.* at 160:24-161:7. ████████████████

██████████████████ *Id.* at 182:23-184:24.

████████████████████████████████

███████████. *Id.* at 295:18-296:17. █████████████████████

████████████████████████████████████.

*Id.* at 233:21-234:12. ████████████████████████

██████████████ *Id.* at 243:21-244:11. ████████████████

████████████████████████████

████████████████████████. *Id.* at 214:20-215:14. He returned home and moved into a hotel room at Foxwoods Casino ██████

████████████████████████████

██████████████████████. *Id.* at 269:10-270:6. He returned to Foxwoods Casino ███████████ and continued to gamble ███████████.

*Id.* at 294:11-295:6. Around this time, his wife filed for divorce, and a consent order was entered barring him "from spending income or incurring debt including credit card debt for the purposes of gambling." *Id.* at 295:7-17; Ex. 4 (Consent

Order).



. Ex. 3 at 290:1-293:8.

Mr. Findeisen repeatedly claimed under penalty of perjury in two separate Plaintiff Fact Sheets and his Supplemental Plaintiff Profile Form that he had not gambled after he stopped using Abilify. *See* Ex. 5 (Plaintiff Fact Sheet) at 17; Ex. 6 (First Amended Plaintiff Fact Sheet) at 17; Ex. 7 (Supplemental Plaintiff Profile Form) at 3. Defendants' own investigation, however, revealed evidence that he had visited the Mohegan Sun casino on April 1, 2017—five months after he stopped taking Abilify. *See* Ex. 8 (Mohegan Sun Records) at 9-10. Defendants then learned that he had a players' club card account at the Mohegan Sun that he had failed to disclose on either of his Plaintiff Fact Sheets. *Id.* at 8. Records of that account showed

*Id.* at 10.

When confronted with these records at his deposition on February 19, 2020, Mr. Findeisen repeatedly claimed that is was not him:





Ex. 3 at 336:12-16.

*Id.* at 338:3-8.

*Id.* at 340:10-12.

*Id.* at 343:10-13.

He identified ▮▮▮▮ as the friend to whom he had loaned his players' club card. *Id.* at 338:6-17.

Defendants then discovered a bank statement from an account in his name reflecting activity at the Mohegan Sun casino around April 1, 2017. *See* Ex. 9 (Washington Trust Records 24 RT 27-31) at 4. The records listed ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



████████████████████████████████████████████████████

██████████████████████. *Id.*

Defense counsel showed these bank statements to Mr. Findeisen's ex-wife during her deposition on July 12, 2020, and she confirmed ████████████████

████████████████████████████████████████████████████

██████████████████████ Ex. 10 (C. Findeisen Tr.) at 153:22-156:16.  A few weeks after her deposition, Mr. Findeisen submitted an amended Plaintiff Fact Sheet that changed his answer to the question ████████████████████████

████████████████████████████████ *See* Ex. 11 (Second Amended Plaintiff Fact Sheet) at 17.  He now admitted that he "████████████████████████

████████████████████████████████████." *Id.*

On August 27, 2020, Mr. Findeisen was deposed regarding the changes he had made to his Plaintiff Fact Sheet.  During this deposition, he admitted ████████

████████████████████████████████████████████████████

██████████████████████ (Ex. 12 (S. Findeisen Second Tr.) at 62:2-6, 68:17-69:16), and that he had ████████████ and ██████████████ during his prior deposition:

- ██████████████████████████████████████████████████ *Id.* at 69:6-8.

- ██████████████████████████████ *Id.* at 69:11-12.



- ████████████████████████████ *Id.* at 69:20-22.

- ████████████████████████████ *Id.* at 74:9-11.

- ████████████████████████ *Id.* at 77:6-7.

Mr. Findeisen admitted that ████████████████ during his deposition

when asked about his post-Abilify gambling, and that ████████████████

████████████████████ *Id.* at 75:21-76:9.  Indeed, he admitted that █

████████████████████████████ *Id.* at 76:23-

25 ████████████████████████████

██████████

## **ARGUMENT**

Summary judgment is appropriate whenever "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56.  For an issue to be genuine, there must be a "legally sufficient

evidentiary basis for a reasonable jury to find for the opposing party."  *McGriff v.*

*Minnesota Mut. Life Ins. Co.*, 127 F.3d 1410, 1413 (11th Cir. 1997) (quotations

and citation omitted).  "A scintilla of evidence in support of a verdict is insufficient

to withstand a motion for judgment as a matter of law; there must be substantial

evidence to support the verdict."  *Id.*

"Rule 56(c) mandates the entry of summary judgment … against a party

who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (quotations and citation omitted; alteration in *Optimum*). Where the non-moving party bears the burden of proof at trial, the movant fulfills its summary-judgment burden by merely "point[ing] out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Here, Mr. Findeisen has asserted against the Defendants each of the available claims listed on the short-form complaints, save loss of consortium. As discussed below, summary judgment is warranted as to each claim because Mr. Findeisen has not—and cannot—come forward with evidence supporting his allegations.[3]

---

[3] "In a multi-district case transferred under 28 U.S.C. § 1407, the transferee court applies the choice-of-law rules of the state in which the action was filed." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 (11th Cir. 2017); *see also, e.g.*, *Costco Wholesale Corp. v. Johnson & Johnson Vision Care, Inc.*, 2015 WL 9987969, at *2 (M.D. Fla. Nov. 4, 2015) (applying "the law of the transferor court" in an MDL case). As this Court stated in its Order on Procedures for Direct Filing and Master Pleadings, "[t]he fact that a case was filed directly in MDL No. 2734 … will have no impact on choice of law, including the statute of limitations that otherwise would apply to an individual case had it been filed in another Designated Forum and removed and/or transferred to this Court." No. 3:16-md-2734, Dkt. 106 at 3. Rhode Island courts apply the most-significant-relationship test. *See Harodite Indus., Inc. v. Warren Elec. Corp.*, 24 A.3d 514, 534 (R.I. 2011). Rhode Island has the most significant relationship because Mr. Findeisen was a Rhode Island resident for the entire duration of his Abilify use. *See* Ex. 11 at 3, 8.

I.      **The Claims Based on an Alleged Failure to Warn Are Not Supported by Evidence That a Warning Would Have Prevented His Injuries.**

The central allegation in Mr. Findeisen's complaint is that he suffered injuries as a result of Defendants' alleged failure to adequately warn that Abilify causes compulsive behaviors, including compulsive gambling.  Master Long Form Complaint and Jury Demand, No. 3:16-md-2734, Dkt. No. 108-1 at ¶¶ 25-27, 40-41, 64, 69-71, 74-81, 93-96.  Indeed, this failure-to-warn allegation is fundamental to his claims for strict liability (Count I), breach of implied warranty (Count III), negligence (Count IV), and negligence per se (Count V).

There is no evidence, however, that a warning would have prevented Mr. Findeisen's alleged injuries.  His treating physician testified that the warning that appeared in August 2016 has not affected his prescribing practices for Abilify, that he continues to use the same prescribing practices now post-label change that he did when treating Mr. Findeisen, and that he stands by his treatment of Mr. Findeisen.  Summary judgment is thus warranted on this failure-to-warn theory.

"[I]t is the established law in Rhode Island that in order for a plaintiff to prevail in [a products liability case], he or she must prove … that the defect was the proximate cause of the … plaintiff's injuries."  *Crawford v. Cooper/T. Smith Stevedoring Co., Inc.*, 14 F. Supp. 2d 202, 211 (D.R.I. 1998); *Smith v. Davol Inc.*, 2016 WL 7041131, at *4 (R.I. Super. Ct. Nov. 28, 2016) (quoting *Almonte v. Kurl*, 46 A.3d 1, 18 (R.I. 2012)) ("[A] plaintiff …  must prove that a defendant

11

proximately caused the injury"). "To show that a defendant is the proximate cause of the alleged harm, a plaintiff must present proof 'that the harm would not have occurred but for the [defendant's] act and that the harm was a natural and probable consequence of the act.'" *Smith*, 2016 WL 7041131, at *4 (citation omitted). The defendant's conduct must "have been a *substantial* factor in bringing about the harm." *Id.* (emphasis in original). Proximate causation may be decided on summary judgment "when the facts are undisputed and are susceptible of but one inference." *Gray v. Derderian*, 472 F. Supp. 2d 172, 180 (D.R.I. 2007).

In pharmaceutical products liability cases where the learned intermediary doctrine applies,[4] "to satisfy the causation element, a plaintiff must show that her treating physician would not have used the product had adequate warnings been provided." *E.g.*, *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1321 (11th Cir. 2017). This is because, under the learned intermediary doctrine, "it is widely

---

[4] Although the Rhode Island Supreme Court has not expressly adopted the learned intermediary doctrine, it has suggested that a prescription drug manufacturer's duty to warn runs to the prescriber. *See Hodges v. Brannon*, 707 A.2d 1225, 1227-1228 (R.I. 1998) (noting that if the drug "did not proximately cause [decedent's] death, then [the manufacturer's] alleged failure to warn [the prescriber] about all the potential dangers in prescribing [the drug] could not possibly have played any role in bringing about [the decedent's] demise"). Several federal courts, including the Second Circuit, have thus surmised that Rhode Island would adopt the learned intermediary doctrine. *See Greaves v. Eli Lilly & Co.,* 503 F. App'x 70, 71 (2d Cir. 2012) ("[W]e conclude that the Rhode Island Supreme Court would likely adopt the learned intermediary doctrine."); *Hogan v. Novartis Pharm. Corp.*, 2011 WL 1533467, at *10 (E.D.N.Y. Apr. 24, 2011) (recognizing that the learned intermediary doctrine has been neither "adopted nor rejected in Rhode Island").

accepted that the manufacturer's duty to warn runs to the physician rather than the patient." *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992) (applying Massachusetts law); *see also, e.g.*, *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1191 (D.N.M. 2008) ("The overwhelming majority of jurisdictions to address this issue apply the learned intermediary doctrine to define a pharmaceutical company's duty to warn of risks associated with the use of a prescription drug.").

Applying the learned intermediary doctrine, Mr. Findeisen cannot carry his burden to prove proximate causation because he has failed to elicit any testimony from his prescribing doctor, Dr. Thomas Scaramella, that a different warning would have changed his decision to prescribe Abilify to Mr. Findeisen. Dr. Scaramella testified that when he discussed medication with his patients, he only covers ████████████████████ and otherwise tells his patients to let him know if anything ████████████ Ex. 1 at 291:6-20. He views impulsivity "as a pretty rare phenomenon" and has not "had any experience with it." *Id.* at 93:12-94:9. Accordingly, he has never discussed impulsivity with any of his patients, even after reports of impulsivity were added to the Abilify warning label:





*Id.* at 293:5-293:22.  Tellingly, he testified that, despite the change in the warning label, he cannot say that he would have changed the way he treated Mr. Findeisen:



*Id.* at 282:2-283:12.  Therefore, there is no evidence that Dr. Scaramella would have done anything differently even had the Abilify label included a warning about compulsive behaviors.  In prescription drug cases involving a learned intermediary, a Plaintiff must prove that a different warning would have caused the prescriber not to prescribe the product to the plaintiff.  *See, e.g.*, *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 816 (11th Cir. 2010).

Courts routinely grant summary judgment where, as here, a plaintiff fails to elicit testimony that a warning would have prevented his or her injuries.  *See, e.g.*, *Rodman v. Otsuka Am. Pharm., Inc.*, 2020 WL 2525032, at \*9 (N.D. Cal. May 18, 2020), *reconsideration denied*, 2020 WL 4207441 (N.D. Cal. July 22, 2020); *In re Mentor Corp.*, 2016 WL 4611572, at \*2 (M.D. Ga. Sept. 2, 2016) (granting summary judgment for defendant where "there is no direct evidence that different warnings would have changed" the prescriber's actions); *In re Zyprexa Prod. Liab. Litig.*, 2009 WL 3596982, at \*9, \*11 (E.D.N.Y. Oct. 20, 2009) (granting summary judgment where plaintiff "offered no evidence suggesting that his physicians would have altered their prescription decisions had [the product's] warning been different, as required under California's learned intermediary doctrine"); *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at \*4 (E.D. La. Feb. 20, 2008) (granting summary judgment where prescribing doctor's "testimony clearly reveal[ed] that stronger warnings concerning the risk of suicide would not have changed his decision to prescribe"); *Gronniger v. Am. Home Prod. Corp.*, 2005 WL 3766685, at \*4 (Pa. Com. Pl. Oct. 21, 2005) ("Without *some* evidence that [the doctor] would have changed his prescribing habits, there can be no issue to present to the jury.") (emphasis in original).

In short, summary judgment is warranted on Mr. Findeisen's failure-to-warn allegations because there is no evidence that even had Defendants included a

warning about impulsivity earlier, any of Mr. Findeisen's alleged harms would have been avoided.

## II.   Mr. Findeisen Has Failed to Adduce Any Evidence Supporting His Design and Manufacturing Defect Claims.

Mr. Findeisen asserts strict liability and negligence claims based, in part, on the allegation that Abilify was defectively designed and manufactured.  After many years of litigation, however, neither Mr. Findeisen nor any other plaintiff has made any efforts—through expert witnesses or otherwise—to adduce evidence of a design or manufacturing defect.

"[T]o prevail in a strict liability claim based on design defect" "[u]nder Rhode Island law, plaintiffs must prove five elements …: (1) a defect; (2) the defect existed at the time the product left defendants' hands; (3) the defect rendered the product unreasonably dangerous; (4) the product was being used as intended at the time of the accident; and (5) the defect was the proximate cause of plaintiffs' injuries." *Jodoin v. Toyota Motor Corp.*, 284 F.3d 272, 276 (1st Cir. 2002).  Importantly, Rhode Island courts have adopted *comment k* of § 402A of the Restatement (Second) of Torts, and hold that "recovery for design-defect liability is precluded" where "the apparent benefits of [a] drug [] exceed the apparent risks, given the scientific knowledge available when the drug was marketed." *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 781 (R.I. 1988).

Here, there is no evidence that a "defect" existed in Abilify, that it was "unreasonably dangerous," or that any defect proximately caused his injuries.  And even if he could meet those elements, the benefits of Abilify are well known and widely published, and Mr. Findeisen has not come forward with any evidence that those benefits were outweighed by the alleged risks.  *See Castrignano*, 546 A.2d at 781.

Likewise, to establish a claim for manufacturing defect under Rhode Island law, "a plaintiff must show a product defect caused by a mistake or accident in the manufacturing process." *Swajian v. Gen. Motors Corp.*, 916 F.2d 31, 35 (1st Cir. 1990); *see also Guilbeault v. R.J. Reynolds Tobacco Co.,* 84 F. Supp. 2d 263, 281 (D.R.I. 2000) (same).   But there is no evidence of a mistake or accident in Abilify's manufacturing.  A manufacturing defect claim necessarily fails when the record is devoid of any evidence of an accident or mistake in the manufacturing process. *Id*.

Courts applying Rhode Island law routinely grant summary judgment where, as here, there is no evidence of a design or manufacturing defect. *E.g.*, *Costantino v. Ford Motor Co.*, 178 A.3d 310, 312 (R.I. 2018) (affirming summary judgment as to manufacturing and design defect claims where "the plaintiff failed to present any [] competent evidence that would create a genuine issue of material fact as to whether the airbags were defective"); *DiPalma v. Westinghouse Elec. Corp.*, 938

F.2d 1463, 1466 (1st Cir. 1991) (applying Rhode Island law) (affirming the district court's grant of a motion for directed verdict when plaintiff provided no evidence of a manufacturing defect).

Accordingly, the Court should grant summary judgment to the extent of Mr. Findeisen's claims are based on a manufacturing or design defect.

## III.  Mr. Findeisen Has Not Adduced Any Evidence to Support His Negligent Misrepresentation and Fraudulent Concealment Claims.

Counts VI and VIII of Mr. Findeisen's short-form complaint seek relief for "negligent misrepresentation" and "fraudulent concealment." Dkt. 1 ¶ 10. Mr. Findeisen has not come close to meeting the requirements of either claim.

To state a claim for negligent misrepresentation under Rhode Island law, the plaintiff must establish the following elements: "(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he [or she] ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation." *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 453 (R.I. 2013) (quoting *Manchester v. Pereira*, 926 A.2d 1005, 1012 (R.I. 2007)).

Here, Mr. Findeisen has not pointed to any misrepresentation by Defendants or any evidence that he relied on any such misrepresentation. Indeed, at his deposition, he admitted that he did not read the Abilify label or conduct any research on Abilify until after he stopped taking the medication:



Ex. 3 at 19:6-16, 37:13-38:10.   Thus, his negligent misrepresentation claim necessarily fails.

Mr. Findeisen's fraudulent concealment claim fares no better.   "To prove fraudulent concealment, it is the plaintiff's burden to show (1) that the defendant made an actual misrepresentation of fact; and (2) that, in making such a misrepresentation, the defendant fraudulently concealed the existence of the plaintiff's causes of action."   *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 601 (R.I. 2019).   Mere silence, inaction, or nondisclosure does not constitute concealment.   *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 183 (R.I. 2008).   Again, Mr. Findeisen has not pointed to any misrepresentations by Defendants, let alone any affirmative misrepresentations. His fraudulent concealment claim therefore fails as well.

## IV.   Mr. Findeisen's Rhode Island DTPA Claims Are Barred Because the Abilify Label Was Subject to Federal Regulation.

In Count VII of his short-form complaint, Mr. Findeisen asserts a claim under Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1 *et seq.* ("DTPA").   The DTPA, however, expressly states that the law does not apply to "actions or transactions permitted under laws administered by [any] regulatory body or officer acting under statutory authority of this state or the United States." R.I. Gen. Laws § 6-13.1-4; *see also State v. Piedmont Funding Corp.*, 382 A.2d 819, 821-822 (R.I. 1978).

Courts apply a two-step analysis in determining whether the DTPA exemption applies. *Lynch v. Conley*, 853 A.2d 1212, 1214 (R.I. 2004). "[S]tep one of the exemption analysis requires the party claiming the exemption to demonstrate that the general activities complained of are subject to monitoring or regulation by a state or federal government agency." *Id.* Then, "[i]f a court determines that the activities are so regulated, the burden shifts to the party seeking to enforce the DTPA to establish that the specific acts at issue are not covered by the exemption." *Id.* (quotations and citation omitted).

Defendants easily satisfy step one of the exemption analysis. The approval, labeling, and sale of prescription drugs—the crux of Mr. Findeisen's claims—are closely regulated by the U.S. Food and Drug Administration. Under the Food, Drug and Cosmetic Act ("FDCA") and subsequent amendments, Congress granted the FDA the authority to "oversee[] the approval and marketing of prescription drugs." *Ironworkers Local Union 68 v. AstraZenica Pharms., LP*, 634 F.3d 1352, n.3 (11th Cir. 2011) ("The FDCA is the primary federal law regulating the actions of drug manufacturers. Under the FDCA, the FDA must approve all prescription drugs on the U.S. market as safe and effective."). Based on this authority, the FDA reviews the label for every prescription drug before it is placed on the market. *Id*. Moreover, with limited exceptions, "[n]o advertisement concerning a particular

prescription drug may be disseminated without prior approval by the Food and Drug Administration." 21 C.F.R. § 202.1(j)(1).

Where, as here, the conduct at issue is the subject of intense federal regulation, the DTPA exemption bars recovery. The Rhode Island Supreme Court's decision in *Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666 (R.I. 2004), demonstrates the application of this principle. There, the court considered claims against a bank under the DTPA alleging that the bank had induced customers to open credit card accounts on the offer of a permanent fixed rate, and then subsequently raised interest rates on those same accounts. *Id.* at 668. The trial court granted summary judgment for the defendants on the DTPA claims, finding that the statute's exemption applied because credit card solicitations are regulated by the U.S. Office of the Comptroller of the Currency. *Id.* at 669. On appeal, the Rhode Island Supreme Court agreed, holding that because credit card disclosures are subject to "monitoring, supervision and regulation by federal agencies," the claim falls "within the exemption provision" and is "not subject to the mandates of the [DTPA]." *Id* at 672.

Likewise, in this case, the DTPA does not apply because prescription drug labels are subject to the "monitoring, supervision and regulation" of the FDA. *See, e.g.*, *Ironworkers*, 634 F.3d at 1355 n.3. That is consistent with the many situations where courts have invoked the DTPA's exception. *E.g.*, *Miller v. Wells*

*Fargo Bank, N.A.*, 160 A.3d 975, n.7 (R.I. 2017) (noting that Wells Fargo is not subject to DTPA as it is a federally regulated entity); *Valvo v. Trans Union LLC*, 2005 WL 3618272, at *9 (D.R.I. Oct. 27, 2005) (finding DTPA claim barred because "Trans Union's compliance with the FCRA is regulated by the Federal Trade Commission"); *State v. Piedmont Funding Corp.*, 382 A.2d 819, 822 (R.I. 1978) (concluding that activities in question, the sale of insurance and mutual funds, are regulated by insurance commissioner and SEC and are outside ambit of DTPA); *Lynch v. Conley*, 853 A.2d 1212, 1215 (R.I. 2004) (finding DTPA statutory exemption applied because lead paint disclosure in residential real estate is regulated by state and federal government); *Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 671-76 (R.I. 2004) (affirming decision that DTPA claim precluded as a matter of law where bank's practices regarding credit card solicitations were regulated by OCC).

Because Defendants' conduct is regulated by the FDA, Mr. Findeisen bears the burden of establishing that the specific allegation at issue—that Defendants made deceptive representations regarding the safety of Abilify—is not covered by the exemption.  Mr. Findeisen plainly cannot meet that burden.  All statements made in Abilify's label and marketing materials have been approved by the FDA. And it was the FDA that required Abilify's label change in September 2016.

Defendants are therefore entitled to summary judgment on Mr. Findeisen's DTPA claim.

## V.   Mr. Findeisen Failed to Provide the Required Notice for His Breach of Warranty Claims.

In Counts II and III of his short-form complaint, Mr. Findeisen asserts breach of express and implied warranty claims against Defendants.  Mr. Findeisen cannot maintain these claims because he has failed to meet the procedural prerequisites under Rhode Island law.  And even if he had, he cannot satisfy the elements of those claims.

To state a claim for breach of express or implied warranty under Rhode Island law, "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  R.I. Gen. Laws § 6A-2-607(3)(a).  Mr. Findeisen provided no such notice prior to filing this litigation.  Indeed, despite the fact that Defendants updated their label in 2016—around the time he stopped taking Abilify—Mr. Findeisen said nothing to Defendants until filing suit more than two years later.

Mr. Findeisen's failure to provide timely notice is dispositive.  *See, e.g.*, *Parrillo v. Giroux Co.*, 426 A.2d 1313, 1317 (R.I. 1981) (affirming dismissal of breach of warranty claim where there was no evidence as to when the notice was given nor what the notice contained).  For example, in *Hyde v. Philip Morris, Inc.*, 1998 WL 656074, at *7 (D.R.I. May 1, 1998), the court granted the tobacco

24

company defendant's motion to dismiss a breach of warranty claim for failure to comply with the notification requirement.  The court explained that even though it had "long been public knowledge that smoking cigarettes may cause cancer," by the time decedent died in 1994, "[a]t no time did plaintiff provide defendant with notice that defendant breached any express warranty."  *Id.*  It therefore concluded that "plaintiff's claim for breach of express warranty should be dismissed."  *Id.*  The court further dismissed the plaintiff's implied warranty claim because he "failed to provide defendant with the requisite notice of the alleged breach before asserting a claim for breach of implied warranty."  *Id.*

As in *Hyde*, Mr. Findeisen knew (or should have known) about the harm years before he filed suit.  He did not, however, timely notify the Defendants.  The Court must therefore grant summary judgment as to the breach of warranty claims.

Moreover, with respect to breach of express warranty, "Rhode Island law requires that … the plaintiff has the burden of proving that the statements or representations made by the seller induced plaintiff to purchase the product and that he/she *relied* upon such statements or representations."  *Ralston Dry-Wall Co. v. U.S. Gypsum Co.*, 740 F. Supp. 926, 929 (D.R.I. 1990), *aff'd*, 926 F.2d 99 (1st Cir. 1991).  Mr. Findeisen plainly cannot meet those requirements where he has never pointed to an allegedly false representation by defendants or explained how he relied on that statement.  This is especially true because, as explained above,

Mr. Findeisen did no research on Abilify before taking it, and relied solely on his doctor, who did not read any of Defendants' representations.  Ex. 3 at 19:6-16, 37:13-38:10.

Furthermore, "[a] claim for breach of implied warranty of merchantability requires a plaintiff to prove that the product is defective, that it was in a defective condition at the time it left the hands of the seller, and that said defect is the proximate cause of the injury."  *Dent v. PRRC, Inc.*, 184 A.3d 649, 656 (R.I. 2018) (quoting *Lariviere v. Dayton Safety Ladder Co.*, 525 A.2d 892, 896 (R.I. 1987)).  As discussed above in Section II, Mr. Findeisen cannot show that any defect proximately caused his injury where neither he nor his doctor reviewed defendants' label.  Beyond that, Mr. Findeisen has never explained or adduced evidence showing how Abilify was defective at all.  Quite the opposite, all of the evidence suggests the drug worked as intended.

## VI.     Under Rhode Island Law, Mr. Findeisen Cannot Bring a Separate Claim for Negligence Per Se.

Count V of Mr. Findeisen's short-form complaint seeks relief for "negligence per se."  However, Rhode Island does not recognize negligence per se as a separate cause of action.  *Wilson Auto Enters., Inc. v. Mobil Oil Corp.*, 778 F. Supp. 101, 104 (D.R.I. 1991).  Instead, the Rhode Island Supreme Court has held that "the violation of a statute or an ordinance is not negligence per se but is to be used by the trier of the facts merely as an aid in determining that issue on

consideration of all the evidence." *Salcone v. Bottomley*, 129 A.2d 635, 637 (1957) (citing *Audette v. New England Transp. Co.*, 46 A.2d 570, 572-73 (1946)). While Mr. Findeisen can attempt to bring a negligence claim under Rhode Island law, he cannot maintain a separate claim for negligence per se. *See Wilson Auto Enters.*, 778 F. Supp. at 104. Therefore, Mr. Findeisen's claim for negligence per se (Count V) of the Complaint fails as a matter of law.

## CONCLUSION

For these reasons, Defendants respectfully ask the Court to grant summary judgment as to each of the claims of Plaintiff's complaint.

Respectfully submitted this 31st day of August, 2020,

*s/ Larry Hill*
Larry Hill (Florida Bar No. 173908)
Charles F. Beall, Jr. (Florida Bar No. 66494)
Kimberly S. Sullivan (Florida Bar No. 101408)
**MOORE, HILL & WESTMORELAND, P.A.**
350 West Cedar Street
Maritime Place, Suite 100
Pensacola, FL 32502
850-434-3541
lhill@mhw-law.com
ljohnson@mhw-law.com
cbeall@mhw-law.com
ksullivan@mhw-law.com

Anand Agneshwar *(pro hac vice)*
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
212-836-8000
anand.agneshwar@apks.com

Matthew A. Eisenstein *(pro hac vice)*
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001
202-942-6606
matthew.eisenstein@apks.com

Lauren Colton (*pro hac vice*)
**HOGAN LOVELLS US LLP**
100 International Drive, Suite 200
Baltimore, Maryland 21202
410-659-2700
lauren.colton@hoganlovells.com

*Attorneys for Defendant Bristol-Myers Squibb Company*

*s/ Matthew Campbell*
Matthew A. Campbell (*pro hac vice*)
Matthew M. Saxon (*pro hac vice*)
Rand K. Brothers *(pro hac vice)*
**WINSTON & STRAWN LLP**
1700 K Street, NW
Washington, DC 20006
202-282-5848
macampbe@winston.com
msaxon@winston.com
rbrothers@winston.com

Luke A. Connelly (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
212-294-6882
lconnell@winston.com

Hal K Litchford
Kelly Overstreet Johnson
Russell Bradbury Buchanan
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
101 N Monroe Street, Suite 925
Tallahassee, FL 32301
850-425-7500
kjohnson@bakerdonelson.com
rbuchanan@bakerdonelson.com
hlitchford@bakerdonelson.com

*Attorneys for Defendants Otsuka Pharmaceutical Co., Ltd.*
*and Otsuka America Pharmaceutical, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this brief complies with the word limit of Local Rule

7.1(F) and contains 6,148 words, excluding the parts exempted by that Rule.


*/s/ Matthew A. Campbell*
Matthew A. Campbell

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY this 31st day of August, 2020, that a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via email to all registered counsel of record.

*/s/ Matthew A. Campbell*
Matthew A. Campbell
